## MINER v. WINE RY. APPLIANCE CO.

(Circuit Court of Appeals, Sixth Circuit. March 4, 1924.)

**Patents ☞328—983,080, for side bearing for railway cars, claims 1 to 4, held not infringed.**

O'Connor patent, No. 983,080, for antifriction form of side bearing for railway cars, claims 1 to 4, *held* not infringed by structures made under Wine patent, No. 1,114,214.

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit by William H. Miner against the Wine Railway Appliance Company. Decree for defendant, and plaintiff appeals. Affirmed.

George I. Haight, of Chicago, Ill. (Joseph Harris, of Chicago, Ill., on the brief), for appellant.

Charles W. Owen, of Toledo, Ohio (Owen, Owen & Crampton, of Toledo, Ohio, on the brief), for appellee.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

MACK, Circuit Judge. This is an appeal from the decree of the District Court of the Northern District of Ohio, dismissing the bill on a finding that defendant's structure did not infringe the O'Connor patent, No. 983,080, issued to the plaintiff, as assignee of the inventor, on January 31, 1911.

As is well known by those familiar with railway car construction, the ordinary freight car is supported near each end by engaging center plates which serve to pivot the truck in reference to the car body. At each of these pivotal areas a top center plate fastened to the bolster of the car body engages a bottom center plate which is attached to the truck bolster. When the car is running, under ordinary conditions on a straight track, only these two areas are required to carry the load and maintain the car in an upright position. When rounding a curve, however, the car body tends to lean toward the outward rail, and this tendency is corrected by the use of what are known as side bearings. The O'Connor patent in suit relates to an antifriction form of side bearing for railway cars.

Claims 1 to 4 thereof, which are alleged to be infringed, read as follows:

"1. In an antifriction side bearing the combination with upper and lower bearing plates, of an interposed polygonal curved faced antifriction member of substantially uniform vertical dimension in all positions of rotation of said member, said antifriction member having a series of pairs of opposing curved concentric bearing faces of different radii, substantially as specified.

"2. In an antifriction side bearing, the combination with upper and lower bearing plates, of an interposed polygonal curved faced antifriction member of substantially uniform vertical dimension, and having a series of pairs of opposing curved concentric bearing faces of different radii, said antifriction member having a guide device, and inclined guides engaging said guide device on said antifriction member to cause it to automatically return to central or normal position, substantially as specified.

"3. In an antifriction bearing, the combination with opposing bearing plates, of an interposed polygonal curved faced antifriction member of substantially

uniform vertical dimension in all positions of rotation of said member between said bearing plates, said antifriction member having a plurality of pairs of opposing concentrically curved bearing faces of different radii, substantially as specified.

"4. In an antifriction bearing, the combination with opposing bearing plates, of an interposed polygonal curved faced antifriction member of substantially uniform vertical dimension, and having a plurality of pairs of opposing, concentrically curved bearing faces of different radii, a guide device on said antifriction member and co-operating inclined guide device to cause its return to central position, substantially as specified." [1]

The alleged infringing structure of the defendant is made in accordance with the drawings and specifications of patent 1,114,214, issued on October 20, 1914. The file wrapper shows that before the defendant's patent was finally issued, numerous objections made by the patent examiner on the basis of the O'Connor patent had to be met, and the scope of the patent accordingly limited. The record shows that as early as 1914, the defendant's patent assumed commercial form; since that time substantial quantities thereof have been sold and used. The specific structure described in the drawings and specifications of the O'Connor patent, on the other hand, was never put into commercial use. The commercial form now being used by the plaintiff was not adopted until several years after the defendant's commercial form first came upon the market.

As the district judge pointed out, of the claims in issue, 2 and 4, must be disregarded because plainly calling for essential elements not present in defendant's structure. The inclined guides on one of the bearing plates and a co-operating guide pin or device connected to or engaging the antifriction member, and traveling in the inclined guides so as to cause the antifriction member to return automatically to its central or normal position when relieved from the load, are part of the invention claimed by O'Connor in claims 2 and 4. These features have no counterpart on the defendant's structure. The nearest approach to an equivalent in the defendant's bearing is a retaining pin to hold the various parts together, but this admittedly has none of the guiding or directing functions of the guide pin in the O'Connor structure.

The more serious controversy centers about claims 1 and 3, which are broader in scope than claims 2 and 4, and do not specifically refer to the guide pin and inclined guides coacting therewith to return the rocker to its central position.

Counsel for the plaintiff appellant broadly assert:

"That the device of the O'Connor patent is the first antifriction bearing of the rocking type, wherein an antifriction member automatically returns to normal position by rolling on its bottom face while its upper bearing face is entirely free from any retarding contact. Further, * * * that in the railroad side-bearing art. O'Connor placed a free roller upon a flat track and so conformed the roller that it would, in actuation, always be of the same effective vertical height, and also would have within it, by reason of the action of gravity, inherent power to return to its normal position after each actuation."

---

[1] Claim 5 was alleged to be infringed in the complaint, but at the trial plaintiff's expert admitted that no evidence was submitted to show infringement of claim 5; this allegation may be regarded as having been dropped by plaintiff.

But, in our judgment, the District Court was well justified in concluding from a study of the prior art "that O'Connor made his invention in a field already crowded with antifriction and gravity centering side-bearing devices." See, in particular, Hennessey, No. 646,986, dated April 10, 1900, especially page 1, lines 29–35, page 2, lines 5–17; Thompson, No. 709,564, April 14, 1903, especially page 1, lines 34–48, page 2, lines 1–10; Buckins, No. 725,315, dated April 14, 1903, especially page 1, lines 9–15, 27–35, 84–94; Cardwell, No. 840,910, dated January 8, 1907, especially page 1, lines 26–35, page 2, lines 18–24; Cardwell, No. 886,761, dated May 5, 1908, page 1, lines 21–36. In view of the prior art, O'Connor cannot be said to be the first to have made use of the rocker movement in a side bearing or even the first to have made use of opposed concentric curves with different radii yet having the same substantial vertical height throughout the rotation of the rocker. The prior inventors did not stress as much as O'Connor the constant vertical height of the rocker, because, while in their devices the arc co-operating with the lower bearing plate had a different radius, not more than one arc co-operated with either the upper or the lower bearing plate, and, as both arcs had the same center, it necessarily followed that the diameter or vertical height of the rocking member remained constant. O'Connor, contemplating contact of arcs of different radii and with different centers with the same bearing plates, had to make special provision to retain the same vertical height throughout the rotations, as, indeed, this seemed to be the very essence of his invention as embodied in claims 1 and 3, calling for a polygonal curved faced antifriction member of substantially uniform vertical dimension in all positions of rotation having a series or plurality of pairs of opposing concentrically curved bearing faces of different radii. The defendant's structure has not a series or plurality of pairs of opposing concentrically curved bearing faces of different radii. It has a single pair of opposing concentrically curved bearing faces of different radii, one of which bearing faces comes into contact only with the upper bearing plate, and the other only with the lower bearing plate.

We cannot agree with counsel for the plaintiff that the essence of the O'Connor patent lies in its antifriction member rolling freely on its bottom side; such is not the invention claimed. Indeed, O'Connor appeared to contemplate that the primary rolling movement should be accomplished on the inclined guides. The O'Connor patent cannot consequently be distinguished from the prior art on the ground that the antifriction member of the side bearing is not suspended but merely rolls freely on its bottom face. If it be said that the other and earlier patents were ineffective, the same may be said of the O'Connor patent in the form disclosed by the specifications—a form which was never used commercially.

Reference to the file wrapper of the O'Connor patent, in the light of which the claims are to be construed, confirms our construction of these claims. In a letter of December 3, 1910, written on behalf of the applicant by his patent solicitor, submitting the present claims 1 and 3, after broader claims had been rejected by the examiner, citing Thompson, No. 709,564, it was said:

"Applicant's antifriction member, it will be noted, has a plurality of pairs of opposing curved concentric bearing faces of different radii so that the antifriction member may make a complete rotation and thus bring successive pairs of its opposing bearing faces into action. In the Thompson patent, 709,564, cited, there is but one pair of opposing curved bearing faces; the antifriction member having two flat sides or faces. Applicant's claims call for a plurality of pairs of curved bearing faces of different radii. Applicant's claims also call for an antifriction member whose vertical dimension in all positions of rotation is the same."

Further, in applicant's letter of amendment, dated June 8, 1910, distinguishing Cardwell, No. 840,910, it had been said:

"The reference cited does not show a polygonal curved faced roller having a plurality of pairs of opposing curved faces struck about different centers and of uniform diameter in whatever position the roller may turn."

It will be observed that the features thus relied upon to distinguish O'Connor from Thompson and Cardwell, are not found in the defendant's device. While O'Connor's specifications (page 2, lines 97–109), as well as the file wrapper, indicate that his antifriction member could in operation make a complete rotation, so that each of the bearing faces would be subject to about the same wear and tear, the plaintiff's expert testified that, in his judgment, such rotation would occur, if at all, only under extraordinary circumstances. Even if the rotation were not a complete one but only approximately 60 degrees, nevertheless, successive pairs of arcs 12 and 13, with different radii and different centers, would successively be brought into contact with both upper and lower bearing plates, as shown in O'Connor's figures 3, 4 and 6. The O'Connor patent thus has an antifriction member of uniform vertical dimension, having a plurality of pairs of opposing concentrically curved bearing faces of different radii. Such a plurality or series of pairs of opposed concentrically curved bearing faces is not found in the defendant's structure. Its antifriction member, following Wine patent, No. 1,114,214, has flat or straight sides. Although the member can rock to such an extent that one of the flat sides following the short arc is brought into contact with the upper bearing plate, nevertheless, there is no infringement because such side or face is not concentrically curved. It cannot rock or roll as an arc would. It can in its extreme position only slip or slide. (See Wine patent, No. 1,114,214, page 1, lines 82–103, and figure 4.) By flattening the sides of his device, thereby avoiding the use of a plurality of pairs of opposed concentrically curved bearing faces of different radii, infringement was averted because, though the practical difference may be small, we cannot, in view of the prior art (see particularly Cardwell patent, 840,910, page 2, lines 13–18, and figure 5) interpret the patents in suit so as to cover more than was expressly claimed and allowed by the Patent Office.

Our examination of record and briefs serves only to confirm the findings and decree of the District Court, which are according affirmed.